AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No.  **23mj1600-BLM**
Black Apple iPhone 11 )
Seized as FP&F No. 2023565500022402 Line Item 0001 )
("Target Device 3") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Shawna Wilson, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Shawna M. Wilson, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: 05/03/2023

*Judge's signature*

City and state: San Diego, California   HON. Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Shawna M. Wilson, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

>Black Apple iPhone 14 Pro Max
>Seized as FP&F No. 2023565500022401 Item 0002
>**("Target Device 1")**
>
>Black Samsung Cell Phone
>Seized as FP&F No. 2023565500022401 Item 0003
>**("Target Device 2")**
>
>Black Apple iPhone 11
>Seized as FP&F No. 2023565500022402 Item 0001
>**("Target Device 3")**

**Target Devices**, as further described in Attachments A-1, A-2, and A-3 and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrants related to the investigation and prosecution of Eric PELAYO for attempting to transport and move illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for four years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern

District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On April 28, 2023, Border Patrol Agent-Intelligence D. Beresiwsky and Border Patrol Agents A. Guzman, G. Ayvar, A. Haynes and A. Powell were performing their assigned duties in the Campo Border Patrol Station's area of responsibility.

12. At approximately 1:22 PM, Agent Beresiwsky observed a silver Lexus RX350 bearing a California license plate that was traveling eastbound on State Route 94 (SR-94) near the community of Potrero, California. This particular location on SR-94 where Agent Beresiwsky observed the Lexus is located approximately two miles north of the United States/Mexico International Boundary. This stretch of SR-94 is sparsely populated and contains very few amenities. Because of its remote location and proximity to the international boundary, illegal aliens are able to travel from the border to the highway in a short period of time and await their predetermined ride. Record checks were performed upon the Lexus revealing it had just recently traveled the local area in a pattern uncommon to the local motorists and common to motorists who are in the area to smuggle. Record checks also revealed the Lexus being registered to a car rental company, concealing the identity of the owner and/or driver of the Lexus.

13. At approximately 1:24 PM, Beresiwsky contacted Agent A. Guzman and provided him with the vehicle description, location, direction of travel and record checks found. At approximately 1:35 PM, Agent Guzman observed the silver Lexus at the intersection of SR-94 and Forrest Gate Road. Agent Guzman followed the vehicle east on SR-94 and immediately notified Agent G. Ayvar to assist him. Ayvar was operating in a marked U.S. Border Patrol vehicle. Both Agents began to follow the Lexus. The Lexus was observed traveling at a high rate of speed and at an instant crossed a double solid line, traveling against traffic, to pass a tractor-trailer making it difficult for the agents to get directly behind him.

14. At approximately 1:40 PM, Agent Guzman attempted to conduct a vehicle stop on the Lexus as they approached the Church Road and SR-94 intersection. Agent Guzman activated his lights and siren but the Lexus sped up, failing to yield. At approximately 1:43 PM, Border Patrol Agent A. Haynes successfully deployed a vehicle immobilization device (VID) across both lanes of SR-94. The Lexus drove over the VID, causing one tire to deflate. The Lexus continued traveling onto the Interstate 8 (I-8) eastbound lanes and increased its speed from approximately 35-40 miles per hour to 70 miles per hour and maintained that speed for approximately 10.5 miles.

15. At approximately 1:55 PM, Agents Guzman and Ayvar terminated the pursuit at the Inkopah exit, just before a mountainous section of I-8 leading to Imperial County. Moments later, they were advised via service radio that some occupants had unboarded the Lexus just east of their location. At this time an agent operating a Remote Video Surveillance System observed an individual, later identified as Gerardo Lopez, who was sitting in the rear passenger seat of the Lexus, exit and pull two individuals out leaving them on the side of the road. Lopez got back in the back seat and drove away. Agent Guzman approached two male individuals, later identified as material witnesses Jesus Alberto BARRIGA-Arriaga and Jose ORTIZ-Aguilar, identified himself as a United States Border Patrol Agent and conducted an immigration inspection. BARRIGA and ORTIZ, stated that they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. At approximately 2:07 PM, Agent Guzman placed BARRIGA and ORTIZ under arrest. BARRIGA and ORTIZ stated that they were forced out of the Lexus while it was still in motion and ORTIZ appeared to be injured as a result of it. This location of the arrest is approximately 31 miles east of the Tecate, California U.S. Port of Entry and approximately two miles north of the United States/Mexico International Border.

16. Unites States Border Patrol Agents assigned to the El Centro Border Patrol Sector were advised of the pursuit. Agent A. Aguiar, who was in full rough duty uniform

1  and was operating a fully marked Border Patrol vehicle observed the Lexus as it passed by his location at the Mountain Springs Road exit. Agents successfully deployed a VID on the Lexus by the Forester Road exit, causing the Lexus to drive on two bare rims. The Lexus then exited on Dogwood Road hitting a civilian vehicle that was stopped at a traffic light. The civilian vehicle was immediately disabled due to the severity of the collision. After the crash, three occupants exited the Lexus and ran east across Dogwood Road towards a canal. The three individuals that absconded from the vehicle crash were detained. At approximately 3:20 PM, the three individuals that absconded from the vehicle crash, including the driver, later identified as defendant Erick PELAYO, was placed under arrest by United States Border Patrol Agent Agent Mclaughlin. The location of the arrest is approximately 8 miles north of the United States/Mexico International Border and approximately two miles west of the Calexico, California U.S. Port of Entry.

17.  At the time of arrest, a black Apple iPhone 14 Pro Max (**Target Device 1**), was found on PELAYO's person, a black Samsung cell phone (**Target Device 2**) was found on the floor of the Lexus, and a black Apple iPhone 11 (**Target Device 3**) was found on another male who was in the Lexus but was later released. All three of these devices were subsequently seized. PELAYO claimed that **Target Device 1 and 2** were his phones. Lopez claimed that **Target Device 3** was his.

18.  Material witness BARRIGA stated that he crossed on April 27, 2023 at approximately 5:00 AM near Tecate, Mexico. BARRIGA stated that he would be charged a smuggling fee of $9,000 dollars. BARRIGA stated that after crossing they walked until they reached SR-94 where a vehicle approached them, opened the doors, and told them to get in. BARRIGA stated that when they entered the vehicle, the people inside told them to get in the trunk and they climbed the rear passenger seat to get to the trunk. BARRIGA stated that at no point the driver or the other two passengers told him to put a seat belt on. BARRIGA stated that after approximately 5 to 10 minutes of leaving the location from where they were picked up, the driver of the vehicle began driving at a very high rate of

speed. BARRIGA stated that the tires of the vehicle exploded but the driver continued driving. BARRIGA stated that after this occurred, he began to fear the vehicle would crash. BARRIGA stated that the vehicle began to slow down but didn't stop. BARRIGA stated that the rear passenger opened the left door of the vehicle and told them to get out. BARRIGA stated that they exited the vehicle into the road and the vehicle sped off and continued driving away.

19. ORTIZ stated that he crossed Tuesday April 25, 2023, by Tecate, Baja California, Mexico. ORTIZ stated that his brother would lend him $2,000 dollars to pay the smuggling fee, that included the transportation to Los Angeles, California. ORTIZ stated that after crossing they walked to a road where they waited until a vehicle arrived. ORTIZ stated that he knew the vehicle was the smuggling vehicle because of his prior illegal crossing experiences. ORTIZ stated that he opened the left rear passenger door, entered the vehicle, and climbed over the rear seat to get to the trunk of the car. ORTIZ stated the people inside the car told them to seat in the rear passenger seat, but he felt the trunk was a safer place to hide. ORTIZ stated that he felt when the tired deflated and he began to fear the car would crash, because the driver continued driving at a high speed of rate and erratically. ORTIZ stated that he told the driver to stop, and the vehicle began to slow down but it didn't completely stop. ORTIZ stated that while trying to climb out of the trunk into the rear seats, he hurt his right arm and fell to the ground while attempting to exit out of the vehicle because his legs were very tired from walking long distances. ORTIZ stated that after exiting the vehicle they turned themselves to the agents.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using

the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **March 28, 2023, through April 28, 2023**.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

23. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

//
//
//
//
//
//
//
//
//
//
//

# CONCLUSION

25. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

26. Because the **Target Devices** were seized at the time of the defendant's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **March 28, 2023, through April 28, 2023.**

27. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1, A-2, and A-3 seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Shawna M. Wilson
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 3rd day of May 2023.

_____
HON. BARBARA L. MAJOR
United States Magistrate Judge

11

# ATTACHMENT A-3

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Apple iPhone 11
Seized as FP&F No. 2023565500022402 Item 0001
**("Target Device 3")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2, and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **March 28, 2023, through April 28, 2023**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.